JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Nicholas Robinson ("Robinson"), appeals his convictions and sexual predator classification. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2004, Robinson was charged with two counts of rape and gross sexual imposition ("GSI"), and one count of kidnapping. The matter proceeded to a jury trial, where the following evidence was presented.
 {¶ 3} On the evening of October 20, 2004, the victim, L.M., was visiting her friend in Lakewood. Prior to this visit, her friend told her about her neighbor "Nick," whom she wanted L.M. to meet. As a result, L.M. wrote a note to Robinson asking to meet him and informing him that she was in the 11th grade.
 {¶ 4} L.M. and her friend saw Robinson that night and conversed with him. L.M. and Robinson went for a walk in the neighborhood. Robinson told her he was 18 years old, although he was actually 26 years old. Robinson then invited L.M. to watch a movie in his bedroom. They sat on the couch, and Robinson touched her breast and put his hand in her pants. She told him to remove his hand and not to touch her. Robinson then removed her sweatshirt and jeans despite L.M.'s attempt to pull them back on. He then took off his pants and put on a condom. Robinson forced her to have sex. She attempted to push him off of her and told him to stop. She eventually was able to push him away with her foot. She dressed and went outside on the porch, where she used Robinson's cell phone to call her mother.
 {¶ 5} L.M.'s mother testified that when she learned that L.M. was at a boy's house, she was very concerned because L.M. had not told her she was going there and because L.M. was cognitively disabled. Although L.M. asked her mother if she could stay and watch a movie, her mother insisted she return home. L.M.'s mother went to Robinson's house to pick her up. When she arrived, his grandmother answered the door and indicated that L.M. and Robinson were upstairs. L.M.'s mother testified that, when her daughter came downstairs, her hair was "tousled." After they left Robinson's house, they went to L.M.'s friend's house and discussed what occurred. Robinson came to the house and claimed that he was 18 and that he "respected" L.M. This statement concerned L.M.'s mother. On the way home, L.M. denied that anything had happened between her and Robinson.
 {¶ 6} On the following day, Robinson called L.M. He testified that L.M. "freaked out," stating that she did not want to talk to him and he should never call her again. L.M.'s mother confronted her about the events of the prior evening because L.M.'s sister told her that L.M. and Robinson had kissed. However, L.M. would not disclose anything to her mother. Four days after the incident, L.M. finally told her mother that Robinson "put his penis in her."
 {¶ 7} The mother immediately took L.M. to the police station and the hospital. Officer Steven Fioritto and Detective Kevin Kauchek testified that they interviewed L.M. and took her statement. Dr. James Holencik testified that he treated L.M. for an alleged sexual assault. Although she did not have any external trauma, he testified that she had slight cervical motion tenderness, which could have been caused by a sexual assault.
 {¶ 8} Robinson's grandmother testified that Robinson lived with her and that she was home on the day of the alleged assault. She stated that Robinson introduced her to L.M. and they went upstairs to watch a movie. She claimed that she heard no noises or commotion from upstairs.
 {¶ 9} The jury found Robinson guilty of one count of rape and GSI. The trial court found him not guilty of the sexually violent offender specification, sentenced him to nine years in prison, and classified him as a sexual predator.
 {¶ 10} Robinson appeals, raising four assignments of error, which will be addressed together where appropriate.
 Sufficiency and Manifest Weight of the Evidence {¶ 11} In his first and second assignments of error, Robinson argues that his convictions for rape and gross sexual imposition are not supported by sufficient evidence and are against the manifest weight of the evidence. Although these arguments involve different standards of review, we consider them together because we find the evidence in the record applies equally to both.
 {¶ 12} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 13} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." Thompkins,
supra at 387. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id.
 {¶ 14} The court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. State v. Bruno, Cuyahoga App. No. 84883,2005-Ohio-1862. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; Statev. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, a reviewing court cannot reverse a conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814.
 {¶ 15} The jury convicted Robinson of rape and gross sexual imposition. The statute governing rape, R.C. 2907.02(A)(2), provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The GSI statute, R.C.2907.05(A)(1), provides that no person shall have sexual contact with another, who is not the spouse of the offender, by purposely compelling the other person to submit by force or threat of force.
 {¶ 16} In the instant case, L.M. testified that she had not met Robinson until the day of the assault. However, she admitted she wrote a letter to him indicating that she wanted to meet him. She testified that, after taking a walk with Robinson, he invited her to his house to watch a movie. They went upstairs to his bedroom, sat on the couch, and began watching a movie. According to L.M., Robinson put his hand in her shirt, touched her breast, and placed his hand in her pants. She indicated to police that she told him to move his hand and not to touch her. Robinson then removed L.M.'s jeans and underwear after she attempted to pull them back up. Robinson also removed her sweatshirt. According to L.M., Robinson then removed his pants and put on a condom. He got on top of her and forced her to have sex. She testified that during the assault she told him to stop and told him "no." At one point, she tried to push him off and was eventually able to push him away with her foot. After the assault, she dressed and went outside.
 {¶ 17} Although Dr. Holencik testified that L.M.'s physical exam revealed no external trauma, he also stated that she had slight cervical motion tenderness, which could have been caused by an assault.
 {¶ 18} Viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence exists to support the conviction for rape and gross sexual imposition. After considering the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we also find that Robinson's convictions were not against the manifest weight of the evidence.
 {¶ 19} Although L.M.'s account and chronology of the events were at times confusing, the facts that remained constant were that Robinson had inappropriately touched her, removed her clothing, and forced himself on her. More importantly, we must keep in mind that L.M. is cognitively disabled, functioning at a fifth grade reading level and a third grade comprehension level. Therefore, the jury could have reasonably inferred that her ability to remember and relate those events might be delayed and difficult. Nevertheless, her testimony at trial was essentially the same as the statement she made to the police just four days after the assault.
 {¶ 20} Robinson points out that L.M. called her mother on the night of the incident to ask if she could stay longer. He argues this creates an inference that she was having a good time. Robinson also argues that because his grandmother did not hear any noise coming from the bedroom, an inference could be made that no assault occurred. Weighing these inferences against all the other evidence presented was within the province of the jury. There was also substantial evidence presented to show that L.M. was sexually assaulted by Robinson. Therefore, we cannot say that the jury lost its way in finding Robinson guilty of rape and gross sexual imposition.
 {¶ 21} Accordingly, Robinson's first and second assignments of error are overruled.
 Ineffective Assistance of Counsel {¶ 22} In his third assignment of error, Robinson argues that he was denied effective assistance of trial counsel.
 {¶ 23} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard or reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland, supra, at 687-688.
 {¶ 24} In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme Court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71,341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910,57 L.Ed.2d 1154, 98 S.Ct. 3135; State v. Calhoun,86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905.
 {¶ 25} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus;Strickland, supra, at 686. The failure to prove either prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. Madrigal, supra, at 389, citingStrickland, supra, at 697.
 {¶ 26} Robinson argues that his trial counsel was ineffective for questioning Officer Fioritto as to what L.M. told him, which allowed the officer to read her statement directly from the police report. L.M.'s statement was read into the record twice and then admitted as an exhibit, without objection. According to Robinson, his trial counsel's actions were not tactical because there was no logic in having the jury hear L.M.'s version of events.
 {¶ 27} Contrary to Robinson's arguments, the decision to question the officer about the victim's statement could have been tactical. Robinson's trial counsel, during closing arguments, focused on the inconsistencies in the stories the victim told the emergency room physician, the police, her mother, and the trial court. Therefore, it is reasonable to conclude that his trial counsel made a tactical decision to attempt to discredit L.M.'s testimony. Moreover, the fact that a tactical decision may backfire does not render counsel's assistance constitutionally ineffective. State v. Adam, Hamilton App. No. C-010517, 2002-Ohio-2886, citing State v. Broadnax (Feb. 16, 2001), Montgomery App. No. 18169.
 {¶ 28} Additionally, we find that L.M.'s statement was cumulative to her testimony given at trial. As previously stated, her trial testimony and statement were substantially similar. Therefore, we find that Robinson was not denied the effective assistance of trial counsel because we cannot say that the result of the trial would have been different.
 {¶ 29} Accordingly, his third assignment of error is overruled.
 Sexual Predator Classification {¶ 30} In his final assignment of error, Robinson argues that the trial court erred in classifying him as a sexual predator.
 {¶ 31} A sexual predator is defined in R.C. 2950.01(E) as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Thus, before classifying an offender as a sexual predator, the court must find by clear and convincing evidence that an offender is likely to commit a sexually oriented offense in the future. R.C.2950.09(B)(4).
 {¶ 32} In State v. Eppinger, the Ohio Supreme Court defined the clear and convincing evidence standard as follows:
"Clear and convincing evidence is that measure or degree ofproof which will produce in the mind of the trier of facts a firmbelief or conviction as to the allegations sought to beestablished. It is intermediate, being more than a merepreponderance, but not to the extent of such certainty as isrequired beyond a reasonable doubt as in criminal cases. It doesnot mean clear and unequivocal."
 State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247,743 N.E.2d 881, citing Cross v. Ledford (1954), 161 Ohio St. 469,477, 120 N.E.2d 118. In reviewing a trial court's decision based upon clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 33} Pursuant to R.C. 2950.09(B)(3), in making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to the following: the offender's age and prior criminal record, the age of the victim, whether the sexually oriented offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender completed any sentence imposed for any conviction, whether the offender participated in available programs for sexual offenders, any mental disease or disability of the offender, whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any additional behavioral characteristics that contribute to the offender's conduct. R.C.2950.09(B)(3)(a)-(j).
 {¶ 34} R.C. 2950.09(B)(2) does not require that each factor be met. It simply requires the trial court consider those factors that are relevant. State v. Cook (1998), 83 Ohio St.3d 404,426; State v. Grimes (2001), 143 Ohio App.3d 86, 89,757 N.E.2d 413. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge."Schiebel, supra at 74, citing Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 35} Robinson argues that the trial court had the option of classifying him as a habitual sex offender; however, he fails to argue why the court should have classified him as such rather than a sexual predator. Moreover, he fails to demonstrate why the habitual sex offender classification is the more appropriate classification.
 {¶ 36} The record demonstrates that the court considered all the factors under R.C. 2950.09(B). Additionally, the court made very specific and thorough findings regarding each factor and found by clear and convincing evidence that Robinson is likely to commit a sexually oriented offense in the future. We agree.
 {¶ 37} At the time of the offense, Robinson was 26 years of age and the victim was a 17-year-old with cognitive disabilities rendering her psychologically younger. The record indicates that Robinson has a long criminal history including traffic offenses, theft, obstructing official business, contributing to the delinquency of a minor, public intoxication, domestic violence, drug abuse, breaking and entering, criminal trespass, and criminal mischief. Most importantly, he was convicted of GSI in 1998, where the female victim was a minor, and as a result, he was classified as a sex offender.
 {¶ 38} Robinson obtained a Static-99 score of five, which is within the medium-high category for reoffending, and his recidivism rate for five years is 33%, 38% for ten years, and 40% for fifteen years. He possesses four risk factors associated with re-offending, including that his victim was unrelated to him, he is presently suffering from cannabis abuse, he has a long criminal history, and he has not had a committed, live-in relationship for more than two years. Although he denied a sexual interest in underage sexual partners, the victim in the instant case was 17 and the victim in the 1998 GSI case was 12.
 {¶ 39} Therefore, based on the evidence in the instant case, Robinson's prior criminal history, the Static-99 results, and the assessment of risk factors associated with sexual reoffending, we find clear and convincing evidence exists to support the trial court's decision classifying Robinson as a sexual predator.
 {¶ 40} Accordingly, his final assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, A.J. and Frank D. Celebrezze, Jr., J. concur.